## ROBERTS v. WELLS & CO., Limited.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. CONTRACTS—CONSTRUCTION.

A contract by which plaintiff, a chair manufacturer, agreed to manufacture for defendant a certain number of chairs, and defendant agreed to advance to plaintiff money sufficient to buy materials and to pay the men, does not require defendant to advance money to pay plaintiff wages for superintending the manufacture of the chairs.

2. MEASURE OF DAMAGES—BREACH OF CONTRACT.

In an action for the breach by defendant of a contract by which plaintiff, a chair manufacturer, was to manufacture chairs for defendant, who was to advance to plaintiff money to buy the materials and to pay the workmen, it appeared that at the time of the alleged breach some chairs had been delivered, and some were in process of construction. The referee, in estimating the damages against defendant, charged it with the expenses of all work done by plaintiff under the contract, and gave credit for money paid by defendant on account of wages, and for the amount

of materials furnished. *Held*, that the referee erred in charging defendant with the total amount of work done under the contract, without giving him credit for the amount by which such work increased the value of the materials on hand.

Appeal from judgment on report of referee.

Action by Watson E. Roberts, as receiver of the property and effects of George F. E. Ells, against Wells & Co., Limited. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Roberts & O'Brien, for appellant.

Carver, Deyo & Jenkins, for respondent.

PARKER, P. J.   George T. Ells, doing business under the name and style of the Ells Manufacturing Company, entered into a written contract with the defendant, dated April 4, 1893, the terms of which are substantially as follows: Defendant orders Ells to manufacture and deliver to it 50 dozen chairs, for which it agrees to pay a price to be thereafter agreed upon. It further agrees to advance to Ells money sufficient to buy the timber for such chairs; such advances to be credited to it on the purchase price of the chairs. It also agrees "to advance him an account weekly to pay men; the amount as per statement of wages presented by Mr. Ells." It was further agreed that an exact account of the cost of chairs was to be kept by Ells, and that the price should be agreed upon after the order was turned out, and also the price of future orders; also, it was agreed that the defendant should have the exclusive sale of the "Ells Elastic Back Rocker and Chair." After some delay, Ells entered upon the performance of this contract. Up to November 11, 1893, he had manufactured and delivered to the defendant 483 chairs, and also had in process of construction, but not completed, a considerable number of others,—just how many does not appear. The defendant furnished more than sufficient timber to manufacture the 600 chairs. It also, from time to time, up to such date, advanced to Ells, in response to calls made by him, the sum of $740.96, to be applied upon wages of men employed upon the work. The defendant then refused to advance any more money, claiming that it had already advanced more than the value of the chairs received. Ells thereupon ceased work on the chairs. Soon afterwards this plaintiff was appointed a receiver of all his property and effects, and, as such receiver, brings this action to recover against defendant damages for a breach of contract.

It appears from the statement rendered by Ells (which is found on page 76 of the appeal book), and it is not disputed by the plaintiff, that the total demands made by Ells for wages, up to November 11th, amounted to $1,150.96. In this amount there was included the sum of $444, as wages to himself at the rate of $3 per day. The amount, therefore, used for wages, other than to himself, up to such date, was $706.66. The defendant had advanced, up to

such date, the sum of $740.96, as also appears from such statement. Therefore, unless defendant was obligated, under the contract, to advance daily wages to Ells himself, it was not in default at the time it ceased paying. It had, up to that time, performed all that it agreed to do, and no breach of its contract had occurred when Ells stopped his work under it. It was Ells' duty, under the contract, to at least continue the work, and furnish the chairs, so long as defendant actually advanced the funds which it had agreed to advance. We are of the opinion that under the contract the defendant was not bound to advance money to pay for Ells' services. The phraseology of the contract is quoted above. In substance, it is to advance to Ells weekly, and on his statement, wages to pay the men. The idea that money was to be advanced to Ells for his own services is not to be found in the language used. On the contrary, it is excluded. It is to pay the men,—evidently men employed by Ells,—and it is to pay the wages of men so employed. Ells could hardly be considered as employing himself at wages to be fixed by himself, nor have we any idea that such was the intention of the parties to the contract. Whatever labor Ells put into the construction of those chairs—whether as a workman at the bench, or as an overseer in the shop, or as a purchaser of materials—would properly be figured in when the cost of the chairs was ascertained, and it would be an element in fixing the price; but it was not a part of the expense which the defendant was obligated to advance during the process of the work. Nor is there anything in the conduct of the defendant, acting under the contract, that indicates a different interpretation of it, although Ells' services were in fact included in the weekly statement rendered. That statement was for a gross amount, and did not, on its face, carry notice to defendant that anything for Ells' services was being asked for. It appears, therefore, that when he stopped the work Ells was demanding from defendant more than he was entitled to, and no breach of the contract on defendant's part has been shown.

If, however, it be conceded that a breach of contract by defendant has been shown, it seems that the referee has fallen into an error in estimating the damages which Ells sustained. Ells was in the business of manufacturing this kind of a chair when this order for 50 dozen was given. He entered upon the performance of the work, and, up to November 11th, had, as the referee finds, expended $1,335.93 for labor and material therein. At that date he ceased the work; having delivered to defendant 483 chairs, and having on hand a large amount in process of construction. This appears from the statement rendered by him to defendant in November, and is found on page 79 of the appeal book. The value of that material, as then fixed by him, was $692.80. All this property was retained by the plaintiff, who refused to give it up on the defendant's demand. The referee, in making up the damages against defendant, charges it with the cost and expenses of all work done by Ells under the contract, amounting to $1,335.93. He gives the defendant credit for the money paid by it on account of wages, $740.96, and he gives it credit for $45, value of chairs and materials

retained by plaintiff; and for the balance, of $549.97, he orders judgment against defendant. Manifestly, if the defendant is to be charged with the whole expense of the work done under the contract Ells should be charged with the fair value to him of the material in process of construction, which he never delivered, and upon which much of the work charged against defendant was done. In any method adopted for ascertaining what Ells has actually lost by defendant's breach of contract, the fair value of the property so retained by him for the purpose of being finished into chairs would seem to be an element which should be charged against him. As he expresses it in the statement sent, "There is enough stuff ready to put up (or nearly so) 150 chairs"; and he values it, for such a purpose, at $700 or $800. Surely, such property was worth more than $45 to Ells. He was in the business of making such chairs, and should not be allowed to insist on retaining such property, and yet treat it as only useless wood. Plainly, he had not sustained a loss to the extent of the labor and material he put on that lumber, if, at a slight expense, he could convert it into 150 chairs. Yet the referee, as appears from his refusal to find defendant's fourth request, has so considered it, and has made up his damages on that theory. We are of the opinion that the measure of damages so arrived at by the referee is an erroneous and unjust one.

These conclusions require that the judgment should be reversed. Judgment reversed, and a new trial ordered; costs to abide the event. All concur.